ON MOTION FOR REHEARING
PER CURIAM.
Upon consideration of appellant’s motion for rehearing and the replies thereto, we vacate our prior opinion and substitute the following. Appellant (third-party plaintiff below) appeals from a final order dismissing with prejudice Counts I-IV of the Sixth Amended Third Party Complaint, in construction contract litigation, contending that the trial court erred in dismissing its claims for contractual indemnity against three subcontractors in Counts I, II, and IV, and in dismissing its claim for common law indemnity in Count III. We reverse as to Counts I, II, and III, but affirm as to Count IV.
Counts I, II, and IV, seeking contractual indemnity, were apparently dismissed in part on the ground that the indemnity contract between the general contractor and subcontractor did not contain either a monetary limitation on the extent of damages, or specific consideration for indemnity as required by Section 725.06, Florida Statutes (1972). That section reads as follows:
725.06 Construction contracts; limitation on indemnification. — Any portion of any agreement or contract for, or in connection with, any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating connected with it, or any guarantee of, or in connection with, any of them, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or materialman, or between any combination thereof, wherein any party referred to herein obtains indemnification from liability for damages to persons or property caused in whole or in part by any act, omission, or default of that party arising from the contract or its performance shall be void and unenforceable unless:
(1) The contract contains a monetary limitation on the extent of the indemnification and shall be a part of the project specifications or bid documents, if any, or
(2) The person indemnified by the contract gives a specific consideration to the indemnitor for the indemnification that shall be provided for in this contract and section of the project specifications or bid documents, if any.
Appellant argues, among other things, that Section 725.06 applies only to indemnification against one’s own negligence and thus does not have any application to the specific facts at bar. We agree.
Specifically, Section 725.06 states in relevant part as applied to the factual scenario before us: “Any portion of any agreement or contract for, or in connection with, any construction, ... between ... [a] general contractor ... [and] subcontractor ..., wherein any party [general contractor/in-demnitee] ... obtains indemnification from liability for damages to persons or property caused in whole or in part by any act, *164 omission, or default of that party [general contractor/indemnitee] arising from the contract ... shall be void ... unless ...” We interpret this statute to apply only in circumstances wherein a party by contract seeks to obtain indemnification from another party for its own active negligence. Under circumstances in which a party seeking indemnity is shown to be actively negligent, we consider that the legislature intended that before such party may be indemnified for its own negligence, it must satisfy either of the two above exceptions set forth in Section 725.06.
In reaching this conclusion, we are not unaware of the general rule that although contracts of indemnification which protect an indemnitee against its own negligence are valid in Florida, they are generally looked upon with disfavor. Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla.1979); Harrison Associates, Inc. v. Florida Power & Light Co., 162 So.2d 298 (Fla. 3rd DCA) cert. den. 166 So.2d 754 (Fla.1964). Moreover, in a very recent opinion, Cothron, Inc. v. Upper Keys Marine Construction, Inc., 480 So.2d 136 (Fla. 3rd DCA 1985), the Third District Court of Appeal determined that Section 725.06 only governs a situation wherein the general contractor/indemnitee seeks indemnification from the subcontractor for the general contractor’s negligence. Cf. Westinghouse Electric Corp. v. Turnberry Corp., 423 So.2d 407 (Fla. 4th DCA 1982) rev. den. 434 So.2d 889 (Fla.1983) (section 725.06 found applicable to an agreement that specifically stated in clear and unequivocable terms that the subcontractor was to be indemnified for its own wrongdoing); A-T-O, Inc. v. Garcia, 374 So.2d 533 (Fla. 3rd DCA 1979) (section 725.-06 held to apply and therefore voided an indemnity agreement whereby an employer agreed to indemnify A-T-0 (manufacturer’s buyer) against the consequences of A-T-O’s own negligence). In cases, however, wherein the subcontractor enters into a contractual agreement to indemnify the general contractor for negligence caused by the subcontractor, Section 725.06 has no application. Cothron, Inc. v. Upper Keys Marine Construction, Inc., 480 So.2d at 137.[1]
Therefore, the proper inquiry in this case is whether the indemnity provisions at bar come within the statute; that is whether the clauses provide indemnification to the indemnitee (general contractor-appellant) for its own negligence. We find that in two of the appellee’s indemnification agreements (Mid-South Glass Co. and Western Waterproofing Co.), Section 725.06 does not apply since the clauses do not absolve the indemnitee (appellant) for its own negligence. Rather the clauses state:
*165 SIXTH: The Subcontractor shall assume the defense of and indemnify and save harmless the Contractor, the Owner, their officers and employees from all claims, liability, loss, damage, or injuries of every kind (except as hereinafter excluded) resulting from the performance or failure to perform the work by the Subcontractor; provided, however, this paragraph shall not apply to claims, liability, loss, damage or injuries based upon the negligence or alleged negligence of the aforesaid indemnities except in connection with their general supervision of the work performed by the Subcontractor.
(emphasis supplied)
The order of dismissal, as it applies to counts I and II, is therefore reversed.
As to Count IV, regarding contractual indemnity against subcontractor Cast-Crete, we were unable to locate the purported indemnification agreement, and following the rule recognizing the correctness of a decision below unless clear error is shown, we uphold the dismissal of the contractual indemnity as to Count IV.
As to the claim against Cast Crete for common law indemnity, we reverse. “Indemnity can only be applied where the liability of the person seeking indemnity is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed.” Houdaille Industries, Inc. v. Edwards, 374 So.2d 490, 493 (Fla.1979). Cast Crete, a subcontractor, argues that the general contractor, Tuttle, on whose behalf appellant issued a performance bond, is not merely vicariously liable because by the provisions of the purchase order agreement between Tuttle and Cast Crete, Tuttle established its duty to inspect and approve the plans and samples for materials submitted by Cast Crete, and Tuttle “had arranged by subcontract for its designated architect-engineer to judge, appraise and approve the materials themselves.”[2] For this reason, Cast Crete contends, Tuttle failed to set forth sufficient ultimate facts upon which relief could be granted, because an essential element of a claim for common law indemnity is freedom from active negligence.
It appears from the record that there is no subcontract between Tuttle and the architect, who was actually the owner’s representative. Nor was there any formal agency relationship between Tuttle and the architect. As to Tuttle’s dealings with Cast Crete, however, there is the possibility of an agency by estoppel, on the theory that Tuttle held the architect out as its agent by virtue of the inspection/approval language in the purchase order agreement between Tuttle and Cast Crete. The elements of an agency by estoppel are: (1) a representation by the principal; (2) reliance on the representation by a third person; and (3) change of position by that third person in reliance on the representation. 2 Fla.Jur.2d “Agency and Employment” s. 7. If such a relationship exists in the present case, Tuttle would not be free of all but vicarious liability if the defects could have been found during the inspection/approval by the architect, and the action for common law indemnity would be defeated. There is also the possibility of a latent defect in the materials supplied by Cast Crete, however. The purchase order agreement speaks of inspection/approval of plans/samples in terms of size, color, and texture. This may or may not cover a possible defect in porousness of the materials, which is the *166 defect alleged in the Sixth Amended Third Party Complaint. "The general rule as to waiver of defects by an acceptance does not apply to latent defects,” 13 Am.Jur.2d “Building and Construction Contracts” s. 55. Thus there is also a possibility that Tuttle was merely vicariously liable for latent defects in the materials.
“When considering a motion to dismiss for failure to state a cause of action, factual allegations of the complaint must be taken as true and all reasonable inferences are assumed in favor of the plaintiff.” Cutler v. Board of Regents, 459 So.2d 413, 414 (Fla. 1st DCA 1984).
For the reasons stated above, we reverse the dismissal of Counts I, II, and III and affirm the dismissal of Count IV for contractual indemnity. Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ERVIN, JOANOS and BARFIELD, JJ., concur.

. Although not controlling, California Civil Code Section 2782 which is strikenly similar to its Florida counterpart, Section 725.06, may provide analogous support. Section 2782 provides:
s. 2782. [Construction contracts; Agreements indemnifying promisee or relieving public agency from liability as void]
(a) Except as provided in Sections 2782.1, 2782.2, and 2782.5, provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract and which purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee or the promisee’s agents, servants or independent contractors who are directly responsible to such promisee, or for defects in design furnished by such persons, are against public policy and are void and unenforceable; provided, however, that this provision shall not affect the validity of any insurance contract, workers' compensation or agreement issued by an admitted insurer as defined by the Insurance Code.
In Gonzales v. Novick Construction Co., 20 Cal.3d 798, 144 Cal.Rptr. 408, 575 P.2d 1190 (1978), the California Supreme Court stated that the purpose of Section 2782, relating to construction contracts, is to insure as a matter of public policy that an indemnitee could not, by contractual language require indemnification for damages resulting solely from its own negligence or willful misconduct. See also E.L. White, Inc. v. City of Huntington Beach, 21 Cal.3d 497, 146 Cal.Rptr. 614, 620 n. 6, 579 P.2d 505, 511 n. 6 (1978) (the California Supreme Court held that parties to an express indemnity provision may, by the use of sufficiently specific language, establish a duty in the indemnitor to save the indemnitee harmless from the results of even active negligence, however it is subject to certain limitations provided in California Civil Code Sections 1668, 2773, 2782, 2784.5).

. In its brief, Cast Crete specifically refers to this language in the purchase order agreement:
The wording of the purchase order under paragraph one (1) (A-2) states that Cast-Crete would furnish "to the contractor (listed at the top as Tuttle/White Contractors, Inc.) seven (7) sets of shop drawings of all precast panels for approval before fabrication.” (Emphasis added.)
Paragraph two (2) states that the "Architect-Engineer will be the sole judge in appraising and approving or disapproving the samples submitted as to the match of the submitted samples with the existing sample specified on file in the Architect-Engineer’s office.”
Finally, paragraph four (4) states that "it is understood and agreed that installation and/or erection is not a part of this agreement."